## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| M.S., a Minor, by and through his | : | |
| parents and Natural Guardians, | : | |
| Michelle M.S. and D.S., | : | Civil Action No. 1:08-CV-2271 |
| | : | |
| Plaintiffs, | : | (Judge Conner) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| CEDAR BRIDGE MILITARY | : | |
| ACADEMY, et al., | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### I.      Introduction

In this diversity lawsuit we are asked to address two related questions regarding who may, and who must, participate in a Rule 35 psychiatric examination of a child-party. For the reasons set forth below, we conclude that counsel for the Plaintiff who is being examined may not participate in, or attend, the examination. We also find that the parents of the minor child plaintiff may not be compelled to participate in this psychiatric evaluation.

### II.      Statement of Facts and of The Case

The pertinent facts in this case can be simply stated: the Plaintiff, M.S., is the minor child of Michelle M.S. and D.S., all of whom reside in Connecticut. In the summer of 2007, M.S.'s parents resolved to have M.S. attend the Cedar Bridge

Military Academy Summer Camp operated on a Boy Scouts facility near Dillsburg, Pennsylvania, after learning that Cedar Bridge held itself out as a "private, faith-based, youth-serving organization dedicated to providing young adults with an intense, rewarding experience through military and high adventure training," and being informed that, "the mission of  Cedar Bridge is to foster a love of Corps, Country and God by providing a vehicle for the application of leadership, strengthening character, teaching responsibility, improving self-discipline, developing an understanding of the role of our military in today's society, and building informed and productive citizens." (Doc 32, ¶¶ 21 and 22.)

Having entrusted their child to the Defendants' care based upon these representations, from July 14, 2007, through July 28, 2007, M.S. attended the Cedar Bridge Military Academy Summer Camp. During this two-week period, it is alleged that M.S. was "physically assaulted by camp employees, staff and counselors, verbally abused and threatened by camp employees, staff and counselors, made to eat his own vomit, threatened with having to clean up human feces with his hands, labeled 'Puke Bucket' by staff and called that name by other campers and counselors and made to listen to sexually explicit 'stories' told by camp employees and counselors and terrorized by camp employees or counselors." (Id., ¶25.)

On December 19, 2008, the Plaintiff, M.S., through his parents acting on his behalf, filed a civil complaint arising out of this alleged incident,(Doc.1), which he subsequently amended on January 20, 2010. (Doc. 32.) In his complaint the Plaintiff, M.S., brings causes of action grounded in negligence, negligent hiring, and intentional infliction of emotional distress against the Defendants. (<u>Id</u>.) The Plaintiff seeks compensatory and punitive damages as compensation for the injuries he allegedly suffered  at the hands of the Defendants while he attended this summer camp program. (<u>Id</u>.)

This case is now proceeding to discovery, with a psychiatric evaluation of M.S. scheduled by the Defendants. In connection with this upcoming evaluation, the parties have sought the intervention of the Court to address two questions: First, may Plaintiff's counsel attend, directly observe or participate in the psychiatric evaluation? Second, as part of this evaluation, must M.S.'s parents , who bring this action on behalf of M.S. as his parents and natural guardians, submit to interviews by the psychiatrist? The parties have submitted comprehensive letter briefs on these two issues and these questions are now ripe for resolution.

For the reasons set forth below, we conclude: (1) that Plaintiff's counsel may not attend this evaluation; and (2) that the Plaintiff's parents may not be compelled

to participate in this process by submitting to interviews by the examining psychiatrist.

### III. <u>Discussion</u>

Rule 35 (a) of the Federal Rules of Civil Procedure governs psychiatric examinations of parties in federal civil litigation, and provides in pertinent part as follows:

> **(a) Order for an Examination.**
>
> **(1)** ***In General.*** The court where the action is pending may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. The court has the same authority to order a party to produce for examination a person who is in its custody or under its legal control.
>
> **(2)** ***Motion and Notice; Contents of the Order.*** The order:
>
> **(A)** may be made only on motion for good cause and on notice to all parties and the person to be examined; and
>
> **(B)** must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it.

Fed. R. Civ. P. 35(a).

By specifying that the court may determine "the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it," Fed. R. Civ. P. 35(a)(2)(B), Rule 35 consigns the procedures to be used in conducting these examinations to the sound discretion of the court, an approach that is consistent

with the general guidance of the rules which provide that issues relating to the scope

of discovery rest in the sound discretion of the Court.  <u>Wisniewski v. Johns-Manville</u>

<u>Corp.</u>, 812 F.2d 81, 90 (3d Cir. 1987).  A court's decisions regarding the conduct of

discovery, therefore, will be disturbed only upon a showing of an abuse of discretion.

<u>Marroquin-Manriquez v. I.N.S.</u>, 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching

discretion extends to rulings by United States Magistrate Judges on requests to alter

the duration of depositions. In this regard:

> District courts provide magistrate judges with particularly broad
> discretion in resolving discovery disputes. <u>See Farmers & Merchs. Nat'l</u>
> <u>Bank v. San Clemente Fin. Group Sec., Inc</u>., 174 F.R.D. 572, 585
> (D.N.J.1997). When a magistrate judge's decision involves a
> discretionary [discovery] matter . . . , "courts in this district have
> determined that the clearly erroneous standard implicitly becomes an
> abuse of discretion standard." <u>Saldi v. Paul Revere Life Ins. Co.</u>, 224
> F.R.D. 169, 174 (E.D.Pa.2004) (citing <u>Scott Paper Co. v. United States</u>,
> 943 F.Supp. 501, 502 (E.D.Pa.1996)). Under that standard, a magistrate
> judge's discovery ruling "is entitled to great deference and is reversible
> only for abuse of discretion." <u>Kresefky v. Panasonic Commc'ns and Sys.</u>
> <u>Co.</u>, 169 F.R.D. 54, 64 (D.N.J.1996); <u>see also Hasbrouck v.</u>
> <u>BankAmerica Hous. Servs</u>., 190 F.R.D. 42, 44-45 (N.D.N.Y.1999)
> (holding that discovery rulings are reviewed under abuse of discretion
> standard rather than de novo standard); <u>EEOC v. Mr. Gold, Inc.</u>, 223
> F.R.D. 100, 102 (E.D.N.Y.2004) (holding that a magistrate judge's
> resolution of discovery disputes deserves substantial deference and
> should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138,  2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

In this case we are asked to exercise our discretion and regulate two procedural aspects of the psychiatric examination of M.S. First, we must ascertain who *may* attend this examination, and specifically must address the request of Plaintiff's counsel to attend the examination.

In considering this question, we note that the exercise of our discretion compels a choice between conflicting guidance. Rule 35 does not, by its terms, specify who may attend a psychiatric examination undertaken in connection with civil litigation. While the rule is silent on this issue, the courts have spoken, albeit with several different voices.

The majority rule adopted by the federal courts is that the court may, and often should, exclude third-party observers, including counsel, from medical or psychiatric evaluations. See, e.g., Calderon v. Reederei-Claus-Peter Offen GmbH & Co., 258 F.R.D. 523, 526-7(S.D. Fla. 2009)("the majority of federal courts have held that third parties should be excluded absent special circumstances. See, e.g., Hertenstein v. Kimberly Home Health Care, inc., 189 F.R.D. 620, 628-34 (D.Kan.1999); McKitis v. Defazio, 187 F.R.D. 225, 228 (D.Md.1999); Ali v. Wang Laboratories, Inc., 162 F.R.D. 165, 168 (M.D.Fla.1995); Tomlin v. Holecek, 150 F.R.D. 628, 631 (D.Minn.1993); Wheat v. Biesecker, 125 F.R.D. 479, 480 (N.D.Ind.1989);

Brandenberg v. El Al Israel Airlines, 79 F.R.D. 543, 546 (S.D.N.Y.1978).") In reaching this conclusion, most courts agree that:

> [T]he need for effective psychiatric examinations militates against allowing an observer who could potentially distract the examining psychiatrist and examine thereby compromising the results of the examination. Moreover, the presence of the observer interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry. See Jacob v. Chaplin, 625 N.E.2d 486, 492 (Ind.App.1993). Additionally, it is recognized that psychological examinations necessitate an unimpeded, one-on-one exchange between the doctor and the patient. Tomlin v. Holecek et al., 150 F.R.D. 628, 632 (D.Minn.1993); Cline v. Firestone, 118 F.R.D. 588, 589 (S.D.W.Va.1988); Brandenberg v. El Al Israel Airlines, 79 F.R.D. 543, 544 (S.D.N.Y.1978); Swift v. Swift, 64 F.R.D. 440, 443 (E.D.N.Y.1974). The Court finds that the presence of an observer would lend a degree of artificiality to the examination that would be inconsistent with the applicable professional standard.

Shirsat v. Mutual Pharmaceutical Co., Inc., 169 F.R.D. 68, 71 (E.D.Pa.1996). Thus, in this regard "'the party seeking the attendance of a third party at the examination bears the burden of showing "good cause" for such attendance pursuant to Rule 26(c).' Reyes v. City of New York, No. 00 Civ. 2300(SHS), 2000 WL 1528239, at *3 (S.D.N.Y. Oct.16, 2000) [and], 'most courts start with a presumption against the presence of third persons, and then go on to consider whether special circumstances have been demonstrated in a particular case.' " Favale v. Roman Catholic Diocese of Bridgeport, 235 F.R.D. 553, 556 (D.Conn.2006).

A few courts take a different view, a view embodied by Pennsylvania Rule of Civil Procedure 4010, and permit counsel for a party to attend a medical or mental examination. Indeed, some federal courts have found the Pennsylvania practice rule persuasive authority for the proposition that counsel should be present at these examinations, at least when the examinations entail a physical, rather than psychological, assessment of a party. Gensberger v. May Department Stores, 184 F.R.D. 552 (E.D. Pa. 1999).

While the Plaintiff has urged us to follow the Pennsylvania procedural practice, arguing that the Pennsylvania practice rule is persuasive authority, counsel candidly acknowledges that this Pennsylvania rule is not a substantive state legal standard which we are obliged to adopt under Erie R. Co. v. Tompkins, 304 U.S. 64 (1938) when we exercise our diversity jurisdiction. We agree with this assessment that Rule 4010 is not a substantive state rule of law which we are obliged to apply under the Erie doctrine. In this regard we note that: "Erie involved the constitutional power of federal courts to supplant state law with judge-made rules. In that context, it made no difference whether the rule was technically one of substance or procedure; the touchstone was whether it 'significantly affect[s] the result of a litigation.' Guaranty Trust Co. v. York, 326 U.S. 99, 109, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945)." Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co., 130 S.Ct. 1431, 1442 (2010).

Judged against this benchmark, Pennsylvania's Rule 4010, which permits counsel to attend physical and mental examinations, is not an outcome-determinative rule of substance which binds this Court. Rather, it is simply a procedural preference which does not control our exercise of discretion under Rule 35 of the Federal Rules of Civil Procedure.

With this understanding we decline to follow the path proposed by the Plaintiff and the Pennsylvania rule. Instead, we adhere to the majority view expressed by the federal courts interpreting Rule 35 of the Federal Rules of Civil Procedure, which recognizes the "need for effective psychiatric examinations militates against allowing an observer who could potentially distract the examining psychiatrist and examinee thereby compromising the results of the examination,[and] the presence of the observer interjects an adversarial, partisan atmosphere into what should be otherwise a wholly objective inquiry" Shirsat v. Mutual Pharmaceutical Co., Inc., 169 F.R.D. 68, 71 (E.D.Pa.1996). Therefore, in the exercise of our discretion we will decline the Plaintiff's invitation to order this examination conducted in the presence of counsel.

Having addressed who *may* participate in this examination, we turn to the question of who *must* participate in the examination. Specifically, we note that the Defendants have indicated that the examiner would like to have the opportunity to interview M.S.'s parents, who bring this action on his behalf, as part of this

9

evaluation. The Plaintiff resists this request, arguing that the parents should not be compelled to participate in interviews as part of the psychiatric examination of their child.

We agree. Once again, Rule 35 itself is silent on this issue, but a number of cases have held that the Court's authority to order psychiatric examinations under Rule 35 does not also entail the power to compel a child's parents to cooperate with interviews as part of the examination of their child. See P.S. v. The Farm, Inc., No. 07-2210, 2008 WL 4198597 (D. Kan. Sept. 11, 2008); Caban ex rel. Crespo v. 600 E. 21st Street Co., 200 F.R.D. 176, 180 (E.D.N.Y.2001). These cases reason that Rule 35 only applies to parties, and in this setting the party-plaintiff is the minor child. Since the minor-child is the party, that child's parents, while acting on his behalf, are not separate parties who may be independently compelled under Rule 35 to participate in an examination and interview process. See Caban ex rel. Crespo v. 600 E. 21st Street Co., 200 F.R.D. 176, 180 (E.D.N.Y.2001)(citing Scharf v. United States, 597 F.2d 1240, 1243 (9th Cir. 1979) and Fong Sik Leung v. Dulles, 226 F.2d 74 (9th Cir. 1955)). In contrast to this authority restricting the application of Rule 35 to the parents of minor parties, the principal case cited by the parties endorsing a requirement that a parent representatives be interviewed in connection with a Rule 35 psychiatric examination of a child-party did so only in dicta, without citation to

any supporting authority, in the context of a ruling which actually denied a request to conduct the examination of the child-party. See Valita M. v. City of Chicago, No. 83-3745 (N.D.Ill. Aug. 1, 1986). We find this sparse authority to be unpersuasive.[1]

In any event, even if we assumed that we had the authority under Rule 35 to order such a parental interview in connection with the examination of a child-plaintiff, we would not exercise that authority here. We would decline to exercise our discretion in this manner because we do not believe that "good cause", Fed. R. Civ. P. 35(a)(2)(A), has been shown that such a step–which is opposed by M.S.' parents– is necessary in this case. Quite the contrary, it appears that these parents have previously been deposed about M.S.'s medical history and discovery regarding M.S.'s treatment and health has already been undertaken. This separate discovery should provide the necessary medical history to inform the current planned examination of M.S. Thus, while an interview of M.S.'s parents might be helpful to the process, we

---

[1]In addition, both the Plaintiff and the Defendants cite Cutting v. United States, No.07-2053, 2008 WL 5064267 (D.Col. Nov. 24, 2008), in support of their conflicting views on this issue. We find, however, that Cutting adds little to our analysis of this question, since it simultaneously holds that a non-party parent of a child cannot be ordered to undergo a medical test pursuant to Rule 35, while also asserting that a parent acting on behalf of a minor party can at least be directed to attend a medical examination of that child and provide medical history information

cannot find that it is necessary or that good cause has been shown to compel M.S.'s

parents to participate in the examination of their child in this fashion.[2]

## IV.   **Conclusion**

For the foregoing reasons, IT IS ORDERED that Plaintiff's counsel may not

attend this examination, and Plaintiff's parents may not be compelled to participate

in interviews as part of this examination.

So ordered this 13th day of May, 2011.

*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge

---

[2]While we do not believe that we should compel this cooperation, we would encourage the parents of M.S., who we understand intend to accompany their child to this examination, to voluntarily take all appropriate steps to facilitate the examination and aid their child in completing this process.