**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| M.S., a Minor, by and through his parents and Natural Guardians, MICHELLE M.S. and D.S., | : : : : | CIVIL ACTION NO. 1:08-CV-2271 (Judge Conner) |
| Plaintiffs | : : | |
| v. | : : | |
| CEDAR BRIDGE MILITARY ACADEMY, *et al.*, | : : : | |
| Defendants | : | |

## ORDER

AND NOW, this 17th day of October, 2012, upon consideration of the

Magistrate Judge's report (Doc. 78) recommending that defendant York-Adams

Area Council, Inc.'s ("York-Adams") motion for summary judgment (Doc. 71) be

granted in part on plaintiff M.S.'s negligence claim related to the absence of liability

insurance because M.S. cannot establish that York-Adams had a duty to ensure that

defendant Cedar Bridge Military Academy ("Cedar Bridge") maintain liability

insurance[1] and denied in part on M.S.'s claim that York-Adams was negligent in

failing to warn or protect M.S. because a jury could reasonably find that York-

Adams knew or should have known of the potential for harm to M.S. and thus had a

duty to warn or protect him, and upon further consideration of York-Adams's

---

[1] No party objects to this section of the Magistrate Judge's recommendation. (See Doc. 79).  The court does not find error on the face of this section, and it therefore adopts the Magistrate Judge's reasoning on this point in its entirety.  See note 3, *infra* (discussing the court's standard of review).

objections to the report (Doc. 79),[2] and, following an independent review of the

_____

[2] York-Adams provides ten objections altogether.  The tenth objection is to the Magistrate Judge's ultimate conclusion on the issue of whether York-Adams had a duty of care to M.S.  The first nine objections focus on the Magistrate Judge's various statements and characterizations of fact from the record.  Several relate to the Magistrate Judge's statements in her Background section, such as: (1) the Magistrate Judge's inclusion of defendant Steven T. Baryla's ("Baryla") indictment, guilty plea, and sentence for transportation of child pornography, (See Doc. 78, at 5 n.5); (2) the Magistrate Judge's statement that "due to various incidents in 2006, Cedar Bridge activities were moved to a different area of the park and Cedar Bridge staff picked up their own food" (Doc. 78, at 7); and (3) the Magistrate Judge's statement that York-Adams "did not directly supervise activities" at Cedar Bridge, (See Doc. 78 at 8), which purportedly erroneously implies that York-Adams indirectly supervised activities at Cedar Bridge, (Doc. 79, at 7).  The Magistrate Judge does not, in any way, rely upon these facts to support her ultimate conclusion.  The court also notes Baryla's indictment occurred in 2009, two years after the events in question in this case, and is therefore immaterial.  The court also notes that the record modestly supports the Magistrate Judge's statement that Cedar Bridge activities were kept separate from the rest of the camp in 2007 due to the incidents in 2006 surrounding Baryla and Berndt's break-up.  (See Doc. 73, Ex. E, at 110).

York-Adams raises three objections regarding the Magistrate Judge's use of Jeannette Holbrook's deposition testimony.  First, York-Adams argues that Ms. Holbrook's testimony regarding cursing and foul language occurred in summer 2007.  This testimony was adduced in the middle of a discussion about events occurring in 2007, but it is not limited by any specific date.  (Doc. 73, Ex. E, at 35).  York-Adams also contends that the altercation between Baryla and the staff member occurred in summer 2007, and this is ostensibly undisputed.  (Doc. 73, Ex. E, at 53-54).  However, as further discussed *supra* in note 4, the court agrees with the Magistrate Judge that a jury could reasonably conclude that the events which took place prior to 2007 were sufficient to place York-Adams on notice of the potential for harm.  Second, York-Adams argues that because Jeanette Holbrook was first employed at Cedar Bridge in 2007, and did not marry York-Adams Boy Scout Ranger Scott Holbrook until 2008, her knowledge of incidents occurring in 2007 cannot be imputed to York-Adams.  (Doc. 79, at 4).  The court concludes that any knowledge Ms. Holbrook may have had is relevant to the determination of information or knowledge imputed to York-Adams, particularly given Ms. Holbrook's past relationship with Camp Tuckahoe.  Third, York-Adams states that Ms. Holbrook's testimony regarding Baryla and Danielle Berndt's ("Berndt") break-up in 2006, prior to her witnessing the police escorting Baryla off the camp's property, is inadmissible hearsay.  However, in her R&R, the Magistrate Judge did

record,[3] the court concluding that a jury could reasonably find that York-Adams

---

not rely upon any hearsay testimony; rather the report was based solely upon Ms. Holbrook's personal knowledge.

York-Adams also objects to the Magistrate Judge's recitation of Jeannette Holbrook testimony that physical abuse occurred at Cedar Bridge. York-Adams states that this finding is unsupported by the record. This objection is unavailing. The Magistrate Judge's R&R simply states that "Berndt and Jeanette Holbrook testified that verbal and/or physical abuse did occur at Cedar Brook." (Doc. 78, at 9). Although Ms. Holbrook witnessed only verbal abuse, Danielle Berndt testified about an incident of physical abuse. (Doc. 73, Ex. H, at 24). Thus, the Magistrate Judge's statement is accurate.

York-Adams's eighth objection is to the Magistrate Judge's statement that a jury could reasonably find that York-Adams "failed to conduct a proper 'due diligence' assessment of Cedar Bridge's operations before allowing them to bring students onto York-Adams' property." (Doc. 78, at 12-13). York-Adams argues that this "places a duty upon York-Adams Boy Scouts that is not recognized under Pennsylvania law." (Doc. 79, at 8). However, the Magistrate Judge's use of this language, when viewed in conjunction with the rest of her reasoning, merely explains that a reasonable jury could conclude that York-Adams was aware or should have been aware of the potential for harm to invitees by Cedar Bridge and failed in its duty to warn or protect those invitees under § 344 of the Restatement. York-Adams also objects to the Magistrate Judge's factual finding that York-Adams Director Todd A. Weidner ("Weidner") did not investigate Baryla's criminal background prior to leasing a portion of the camp to Cedar Bridge. (Doc. 78, at 4). The Magistrate Judge does not use this factual statement to support any aspect of her *ratio decidendi* nor does it play any role in her conclusion. Hence, the court finds the objection to be immaterial.

York-Adams' ninth objection is to the Magistrate Judge's characterization that there were "many events and [a] long period of interaction leading up to the summer of 2007" which raise genuine issues of material fact as to what Weidner and York-Adams knew or should have known about activities at Cedar Bridge. (Doc. 78, at 18). York-Adams argues that there are only two incidents which occurred prior to 2007: Berndt's testimony that Baryla pushed another student and testimony regarding the 2006 break-up between Berndt and Baryla. (Doc. 79, at 10). York-Adams argues that this is not sufficient to place York-Adams on notice of the potential for harm. It is true that several incidents cited by the Magistrate Judge, such as Jeanette Holbrook's testimony regarding a Cedar Bridge staff member pushing Baryla up against a building, actually occurred in 2007. However, as further discussed *supra* in note 4, the court agrees with the Magistrate Judge that a jury could reasonably conclude that the events which took place prior to 2007 are sufficient to place York-Adams on notice of the potential for harm.

knew or should have known of the potential for harm to M.S. and thus had a duty to

warn or protect him,[4] it is hereby ORDERED that:

1.      Except as set forth herein, the report and recommendation (Doc. 78) of
        the Magistrate Judge are ADOPTED.

2.      York-Adams Area Council, Inc.'s Motion for Summary Judgment (Doc.
        71) on M.S.'s claim that York-Adams was negligent in failing to warn
        or protect M.S. against the allegedly tortious acts of Baryla and/or
        Cedar Bridge is DENIED.

---

[3] York-Adams, as the movant, must show that no genuine issue of material fact
exists and that it is entitled to judgment as a matter of law. See FED. R. CIV. P. 56.
The court must view the evidence, and all justifiable inferences to be drawn from
the evidence, in the light most favorable to the non-moving party. See, e.g., Rauser
v. Horn, 241 F.3d 330, 334 (3d Cir. 2001). Where objections to a magistrate judge's
report and recommendation are filed, the court must perform a *de novo* review of
the report's contested portions. FED. R. CIV. P. 72(b)(3). The court will review the
uncontested portions of the Magistrate Judge's report for "clear error on the face of
the record." See Cruz v. Chater, 990 F. Supp. 375, 375-78 (M.D. Pa. 1998) (quoting
FED. R. CIV. P. 72(b) advisory committee's note (1983)).

[4] There is a genuine dispute of material fact as to what York-Adams knew or
should have known about the operations of Cedar Bridge prior to the summer of
2007. A reasonable jury could conclude that York-Adams was aware or should have
been aware of the potential for harm to invitees by Cedar Bridge and thus had a
duty to warn or protect those invitees under § 344 of the Restatement. The
principal events are those surrounding Baryla and Berndt's break-up in 2006.
Baryla became emotionally upset, was crying, attempted to break open a window,
and generally caused a scene in front of campers. (Doc. 73, Ex. C, at 53-62; Ex. E., at
14). He also snuck into the campers' sleeping facilities, cried to them and told them
about what had happened. (Doc. 73, ex. H, at 22-23). Cedar Bridge staff asked
Baryla to leave camp, which he did, only to return later. (Doc. 73, Ex. C, at 53).
Thereafter, Weidner authorized Baryla's removal from the camp by law
enforcement personnel. (Id.) After this incident, a Cedar Bridge staff member took
Baryla's truck apart and shot up parts of the vehicle in the Boy Scouts rifle range.
(Doc. 73, Ex. B, at 68-69). Based on these facts, a jury could reasonably conclude
that York-Adams received adequate notice of claims (from a Cedar Bridge camper)
of verbal and physical abuse. York-Adams is not entitled to judgment as a matter of
law.

3.      York-Adams Area Council, Inc.'s Motion for Summary Judgment (Doc.
        71) on M.S.'s negligence claim related to the absence of liability
        insurance is GRANTED.


                                    S/ Christopher C. Conner
                                    CHRISTOPHER C. CONNER
                                    United States District Judge